# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-00020-FDW

| | |
|---|---|
| TERRANCE L. JAMES-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| N.C. DEPT. OF PUBLIC SAFETY, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint. [Doc. 22]; see 28 U.S.C. § 1915(e)(2). Plaintiff has been granted in forma pauperis status. [Doc. 12].

## I. BACKGROUND

Pro se Plaintiff Terrance L. James-Bey, a North Carolina inmate at Marion Correctional Institution (MCI), filed this action on January 22, 2019, pursuant to 42 U.S.C. § 1983, naming thirteen Defendants. [Doc. 1]. In Plaintiff's original Complaint, Plaintiff, who identifies himself as a "free born Moor," alleged that Defendants are "illegally and unlawfully detaining" his "natural person as a 'Black Political Hostage,'" that he has been assigned to Marion's Rehabilitative Diversion Unit (RDU)[1] as an act of religious persecution, and that Marion officials have confiscated both his personal property (including religious property) and legal papers in retaliation for Plaintiff's complaints against Defendants related to their alleged mistreatment of him based on his religion. [Id. at 3]. Plaintiff, however, did not allege any particular conduct by any of the

---

[1] The RDU program at Marion "was created as part of NCDPS's recent policy reforms regarding restrictive housing in the North Carolina prisons." Covington v. Lassiter, No. 1:16cv387, 2017 WL 3840280, at *5 (W.D.N.C. Sept. 1, 2017). A full description and discussion of the RDU program at Marion can be found in Covington v. Lassiter, and this Court takes judicial notice of the Court's description of the RDU program in that action.

thirteen Defendants he named in his original Complaint. [See id.]. On initial review of Plaintiff's original Complaint, the Court found that it suffered from numerous deficiencies. The Court instructed the Plaintiff regarding the nature of these deficiencies including, among other things that:

> Plaintiff is placed on notice that he may not bring unrelated claims against unrelated parties in a single action. See FED. R. CIV. P. 18(a), 20(a)(2); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting that "[u]nrelated claims against different defendants belong in different suits," so as to prevent prisoners from dodging the fee payment or three-strikes provisions in the Prison Litigation Reform Act). Plaintiff may only bring a claim against multiple defendants as long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact. FED. R. CIV. P. 20(a)(2).

The Court also instructed the Plaintiff that, to the extent Plaintiff had named individuals as defendants solely based on their supervisory positions, these defendants are subject to dismissal. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). [Doc. 18 at 3]. The Court further instructed that the Plaintiff must allege how each individual Defendant personally participated in the alleged violations of constitutional rights. [Doc. 18 at 3].

The Court allowed the Plaintiff 30 days to correct the deficiencies and to file an amended complaint in accordance with the Court's Order. [Doc. 18]. The Plaintiff timely filed an Amended Complaint. [Doc. 22].

In his Amended Complaint brought pursuant to 42 U.S.C. § 1983, Plaintiff claims violations of "Article 6, Sec. 2, U.S. Const.; U.N. Rights of Indigenous Peoples; and, First, Fourth, Ninth and Tenth Bill of Rights." [Doc. 22 at 3]. He names the following individuals as Defendants,[2] both in their individual and official capacities: (1) FNU Corpening, identified as the

---

[2] The Court notes that in the caption of Plaintiff's Amended Complaint, the Plaintiff lists the N.C.

2

Superintendent/Warden at MCI; (2) FNU Hergenmother, identified as a sergeant officer at MCI; (3) FNU Neal, identified as correctional officer at MCI; (4) Robert T. Barker, identified as a disciplinary hearing officer at MCI; (5) Kimberly Grande, identified as the Executive Director of the Grievance Resolution Board for NCDPS; (6) Kenneth Lassiter, identified as the Director of Prisons; (7) Monica Bond, identified as Chief Disciplinary Hearing Officer; (8) Patricia McEntire, identified as Unit Manager of D-Unit and MCI; (9) FNU Nichols, identified as sergeant officer at MCI; (10) Thomas Hamilton, identified as Unit Manager of E-Unit at MCI; (11) Angela Dellaripa, identified as a grievance examiner for NCDPS; (12) Faustina Brown, identified as a grievance manager for NCDPS; and (13) Wakenda Greene, identified as a grievance manager for NCDPS.

Plaintiff's claims are made without reference to any particular alleged Constitutional violation. Plaintiff's claims generally relate to the consequences and incidents of Plaintiff's Security Risk Group (SRG) classification and placement in the RDU program at MCI, particularly in relation to his self-proclaimed membership in the Moorish Science Temple. Plaintiff avers:

> In violation of Article 6, Section 2 of the U.S. Constitution; the U.N. Declaration On the Rights of Indigenous People; and the 1st, 4th, 9th and 10th Bill of Rights, along with the Aid and Assistance of Judge Frank D. Whitney, the following Defendants have continued in a campaign of provocation, Harassment and Religious Persecution because of my National Origins, Race and Faith in the Moorish Science Temple, while using the so-called RDU Program as a cover for their criminal and liable conduct.

[Doc. 22 at 6]. Plaintiff then asserts a laundry list of claims. [See id. at 6-10]. These include claims that (1) Defendants Hergenmother and Grande confiscated two large manila envelopes of

---

Department of Public Safety (NCDPS) as the first Defendant. The Plaintiff, however, does not list the NCDPS as a Defendant in the body of the Complaint. In any event, the Court previously advised the Plaintiff and held that neither the State of North Carolina nor its agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). [Doc. 18 at 4]. As such, the Court will not further address any attempt by Plaintiff to again name the NCDPS as a Defendant in this case.

Plaintiff's legal and religious materials; (2) Defendants Barker, Bond, and Lassiter "denied evidence and witness statements" during the DHO process (related to the seized envelopes) and found the Plaintiff guilty based solely on the statements of reporting officers; (3) Defendants Corpening, Lassiter, and McEntire fabricated excuses to cancel "all" Moorish Science services and ordered staff to persecute the Plaintiff by fabricating offenses against him; (4) Defendants Hamilton and Corpening subjected the Plaintiff to arbitrary punishment, holding him in long-term confinement without notice or review and arbitrarily labeling the Plaintiff a "non-participant in RDU;" (5) Defendant Neal confiscated all of Plaintiff's religious materials on February 11, 2019 and Defendants Barker, Bond, and Lassiter "supported and encouraged this abuse of authority;" (6) Defendants Hamilton and Corpening intercepted and withheld packages mailed to the Plaintiff as a result of his RDU non-participant status; (7) Defendants Nichols, Hamilton, and Corpening "tampered with outgoing mail;" (8) Defendant Nichols has targeted outgoing mail addressed with certain Moorish American identifiers and had sanctions imposed against Plaintiff for "engaging the UCC process" under "gang participation;" (9) Defendants Corpening, Hamilton, and McEntire provided Defendant Nichols and other staff members unmonitored access to prisoner mail, allowing Defendant Nichols to retrieve the Plaintiff's letters without justification and to harass the Plaintiff without justification; and (10) Defendants Lassiter, Grande, Dellaripa, Brown, and Greene conspired and colluded with respect to "all of the above detailed acts, they all being notified directly or through the Grievance Process." [Doc. 22 at 6-9].

## II. STANDARD OF REVIEW

The Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil

4

action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

The Court has conducted its initial review of Plaintiff's Amended Complaint. Despite the Court's previous admonition [Doc. 18 at 3], the Plaintiff has named various Defendants without describing how each Defendant personally participated in the alleged constitutional violations. These include Defendants Dellaripa, Brown, and Greene. The Court will, therefore, dismiss these Defendants.

Next, the Court examines the rights Plaintiff alleges that Defendants violated. As noted above, Plaintiff generally alleges violations of "Article 6, Sec. 2, U.S. Const.; U.N. Rights of Indigenous Peoples; and, First, Fourth, Ninth and Tenth Bill of Rights." Article 6, Section 2 of the Constitution, the Supremacy Clause, is not a source of any federal rights and does not create a cause of action. Armstrong v. Exceptional Child Center, Inc., 135 S. Ct. 1378, 1383 (2015)

(citations omitted). The Court assumes that Plaintiff's reference to the U.N. Rights of Indigenous Peoples is made to the United Nations Declaration on the Rights of Indigenous Peoples. There is no private right of action under this Declaration. See Paige v. Virginia, 67 F.3d 296 (4th Cir. 1995) (unpublished table opinion); Bey v. North Carolina, No. 3:12-cv-454, 2012 WL 3528005, *1 (W.D.N.C. Aug. 14, 2012). As such, the Court will not further address Plaintiff's claims under Article 6, Section 2 of the U.S. Constitution or this Declaration.

As for the Plaintiff's reference to the "First, Fourth, Ninth and Tenth Bill of Rights," the Court assumes Plaintiff is referring to the First, Fourth, Ninth, and Tenth Amendments to the U.S. Constitution. The first ten amendments to the Constitution form the Bill of Rights. A prisoner may state a Fourth Amendment claim under § 1983 based on unreasonable searches and seizures. See Bushee v. Angelone, 7 Fed. App'x 182, 183-84 (4th Cir. 2001) (holding prisoner stated a Fourth Amendment privacy claim under § 1983 based on unreasonable body cavity search conducted in front of five people in an open conference room with windows open to an area with other workers); Brown v. Holbrook, No. 3:16-2898-MGL-BM, 2016 WL 7664719, *1 (D.S.C. Dec. 15, 2016) ("The Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity and other harassing and abusive behavior that rises to the level of unreasonable seizure.") (internal quotation marks and citations omitted). None of the Plaintiff's allegations, however, rise to the level of a Fourth Amendment violation, particularly not where Plaintiff's status as a prisoner necessarily subjects him and his belongings to a significantly higher level of scrutiny and control than a civilian. See McGivery v. Mathena, No. 7:14cv00057, 2014 WL 2967622, *1 (W.D. Va. July 1, 2014) ("While the Fourth Amendment protects against 'unreasonable searches and seizures,' [a prisoner] has no cognizable expectation of privacy in his prison cell, and thus, the Fourth Amendment offers no protection against such a search and

seizure.") (citation omitted). As such, the Plaintiff has stated no cognizable claim under the Fourth Amendment.

The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. The Ninth Amendment does not confer substantive rights and cannot form the basis of a § 1983 action. Evans v. Pitt Cty Dep't of Social Serv., 972 F.Supp.2d 778 (E.D.N.C. 2013), vacated in part on other grounds, Evans v. Perry, 578 Fed. App'x 229 (4th Cir. 2014) ("[T]he Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.") (quotation marks and citation omitted). As for Plaintiff's claim of violation of Plaintiff's alleged Tenth Amendment rights, the Court does not see how it could apply here to afford the Plaintiff any relief under § 1983. See U.S. Const. Amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the States respectively, or to the people."). Accordingly, the Plaintiff has failed to state a cognizable claim for violation of the Ninth or Tenth Amendments.

The Court, therefore, examines the Plaintiff's claims in the context of potential violations of the First Amendment, as well as other Constitutional violations fairly raised by Plaintiff's allegations. Plaintiff makes various claims regarding his mail, including that certain Defendants "tempered with outgoing mail" and targeted certain outgoing mail for inspection and that Defendant Nichols had unfettered access to Plaintiff's outgoing mail. Plaintiff does not allege, however, that Defendants systematically interfered with Plaintiff's ability to send or receive mail. The First Amendment protects a prison inmate's right to the free flow of incoming and outgoing mail. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citing cases). The Fourth Circuit Court

of Appeals has held, however, that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and therefore, constitutional." Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999). Therefore, "although an inmate's First Amendment rights may be violated when his outgoing mail is censored, his First Amendment rights are not violated when his outgoing mail is simply opened and inspected for, among other things, contraband." Id. at 549. Plaintiff has not stated a claim on this issue. Accordingly, Plaintiff's First Amendment claims related to mail access and "tampering" do not survive initial review under 28 U.S.C. § 1915(e).

Plaintiff also asserts claims arising from or incident to his status in the RDU program. Namely, Plaintiff alleges that two food packages from Union Supply were intercepted and withheld from the Plaintiff due to his RDU "non-participant" status. Plaintiff also contends that he is subjected to long-term confinement in segregation due to this status. The Plaintiff attaches a letter to his Amended Complaint related to the intercepted food packages. [See Doc. 22-1 at 31]. It provides, in pertinent part:

> You were placed in the Non-Participating portion of the RDU program on February 11th, 2019. This was due to your refusal to participate in the program as well as your continued disruptive behavior. You were involved in 6 incidents from January 8th through February 11th. These incidents were accompanied by 14 various infarctions.
>
> Due to your status being Non-Participating RDU you are not eligible for a food package. It was returned to Union Supply Company on Monday April 22nd 2019. The money will be refunded by Union Supply Company to the purchaser in the near future.

[Doc. 22-1 at 31].

To the extent Plaintiff intended to allege that Defendants violated his due process rights in relation to this conduct, to prevail on a procedural due process claim, an inmate must first

8

demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Supreme Court has repeatedly held that a prisoner has no constitutional right under the due process clause to be incarcerated in a particular facility or to be held in a specific security classification, barring some showing by the prisoner that her confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hewitt v. Helms, 459 U.S. 460, 468 (1976). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)). Here, Plaintiff has not stated a cognizable due process claim in relation to Plaintiff's security classification and placement in the RDU program or in relation to the incidents thereof.

The Plaintiff also makes various claims regarding the conduct of disciplinary hearings in

9

relation to Plaintiff's confiscated SRG materials. Plaintiff alleges that Defendants Corpening and Lassiter "ordered or directed staff in persecuting [Plaintiff] and fabricating false disciplinary offenses against [him]" and that Defendants Hamilton and Corpening have subjected Plaintiff to arbitrary punishment without notice or review, while profiling Plaintiff's housing status as "regular population." [Doc. 22 at 6-7]. Plaintiff further alleges that Defendants Barker, Bond, and Lassiter "denied [Plaintiff] evidence and witness statements throughout the DHO process." [Id. at 6]. The Court, taking the Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, finds that Plaintiff's claim regarding the conduct of the disciplinary hearing related to the confiscation of Plaintiff's SRG materials is not clearly frivolous. See Wolff v. McDonnell, 418 U.S. 539 (1974) (holding prisoners retain some due process rights in the conduct of disciplinary hearings). This claim, therefore, survives initial review.

Finally, Plaintiff's claims that his legal and religious materials and packages were wrongfully confiscated do not survive initial review. A claim based on the deprivation of his personal property is not actionable under § 1983 unless there is no adequate post-deprivation remedy available. See Parratt v. Taylor, 451 U.S. 527, 542 (1981), overruled on other grounds by 474 U.S. 327 (1986); Harris v. McMullen, 609 Fed. Appx. 704, 705 (3d Cir. 2015) (unpublished). North Carolina provides an adequate remedy by filing a common law claim for conversion of property. The Court will, therefore, dismiss these claims.

## IV.     CONCLUSION

For the foregoing reasons, the Plaintiff's Amended Complaint survives initial review as to Plaintiff's claims regarding the conduct of disciplinary hearings against Defendants Corpening, Lassiter, Hamilton, Barker, and Bond only and only in their individual capacities. All of Plaintiff's remaining claims against all remaining Defendants fail initial review and those Defendants will be

dismissed, as will be the claims against Corpening, Lassiter, Hamilton, Barker, and Bond in their official capacities.

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Amended Complaint [Doc. 22] survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A against Defendants Corpening, Lassiter, Hamilton, Barker, and Bond, in their individual capacities, related to the conduct of disciplinary hearings, as further set forth in this Order. The Plaintiff's claims against Defendants N.C. Dept. of Public Safety, McEntire, Hergenmother, Grande, Neal, Dellaripa, Nichols, Brown, and Greene shall be dismissed.

(2) This Court recently enacted Local Rule 4.3, which sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants FNU Corpening, Kenneth Lassiter, Thomas Hamilton, Robert T. Barker, and Monica Bond, who are current or former employees of NCDPS.

**IT IS SO ORDERED.**

Signed: October 14, 2019

_____
Frank D. Whitney
Chief United States District Judge