IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00020-MR

| | |
|---|---|
| TERRANCE L. JAMES-BEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KENNETH LASSITER, et. al., ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 95].

**I.     PROCEDURAL BACKGROUND**

Plaintiff Terrance L. James-Bey ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Bertie Correctional Institution in Windsor, North Carolina. On January 22, 2019, Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983, naming 19 individuals and the North Carolina Department of Public Safety (NCDPS) as Defendants. [Doc. 1]. Plaintiff claims, in part, that officials at Marion Correctional Institution ("Marion"), his previous place of incarceration, improperly confiscated his property, including religious and legal papers, and then denied him a proper disciplinary hearing. [See id.]. Before initial review was conducted, Plaintiff

filed two motions for emergency injunctive relief seeking an Order from the Court requiring Marion officials to immediately return the confiscated materials. [Docs. 6, 7]. The Court denied Plaintiff's motions for Plaintiff's failure to show likelihood of success on the merits.[1] [Doc. 9].

The Court conducted initial review of Plaintiff's Complaint and ordered Plaintiff to file an Amended Complaint to remedy the identified defects and deficiencies. [Doc. 18]. Plaintiff timely filed an Amended Complaint.[2] [Doc. 22]. On initial review of the Amended Complaint, Plaintiff's claims against Defendants Kenneth Lassiter, Monica Bond, Robert Barker, Thomas Hamilton, and H. Corpening, in their individual capacities, based on the conduct of disciplinary hearings related to the confiscated materials survived.[3] [Doc. 28]. Plaintiff identified Defendant Lassiter as the Director of Prisons, Defendant Bonds as the Chief NCDPS Disciplinary Hearing Officer (DHO), Defendant Barker as an NCDPS DHO, Defendant Hamilton as a Unit Manager at Marion, and Defendant Corpening as the Warden of

---

[1] Plaintiff has since brought five more motions for emergency injunctive relief in this matter, all of which have been denied. [Docs. 23, 24, 26, 27, 59, 60, 73, 75, 84, 85].

[2] Neither Plaintiff's original Complaint nor his Amended Complaint were submitted under penalty of perjury.

[3] Although Plaintiff did not allege what constitutional right he believes was violated by Defendants' conduct, the Court construed this surviving claim as one brought under the due process clause of the Fourteenth Amendment. [See Doc. 28].

2

Marion. [Doc. 22 at 2-4]. The remainder of Plaintiff's claims and the other named Defendants were dismissed. [Id. 10-11]. For relief, Plaintiff seeks monetary damages and return of the confiscated materials. [Doc. 22 at 10].

Plaintiff appealed the Court's initial review Order and moved to recuse the Honorable Frank D. Whitney, District Court Judge, from presiding over this matter. [See Doc. 26, 33-35]. The Court denied Plaintiff's motion to recuse[4] [Doc. 39] and the Fourth Circuit ultimately dismissed Plaintiff's appeal for failure to prosecute [Doc. 54-1]. On March 16, 2020, the Court entered its Pretrial Order and Case Management Plan setting the deadlines in this case. [Doc. 57]. Beginning in March 2020, the Court's mail to the Plaintiff began being returned as "Refused by Inmate." [See Docs. 55, 56, 58, 61]. The Court cautioned Plaintiff that refusing mail from this Court may constitute a failure to prosecute this case. [Doc. 60]. Thereafter, on Defendants' motion, the Court ordered Plaintiff to notify the Court whether he intended to prosecute this action. [Docs. 62, 63]. Plaintiff failed to respond to the Court's Order, which was again returned as refused by Plaintiff. [See Doc. 64]. The Court, therefore, dismissed this action without prejudice. [Doc. 66]. Over eight months later Plaintiff moved to reopen his

---

[4] On April 22, 2020, this case was reassigned to the Undersigned for reasons wholly unrelated to this case.

case, claiming he never received the Court's communications or the Order requiring Plaintiff to notify the Court whether he intended to prosecute this action. [Doc. 76]. The Court granted Plaintiff's motion and reopened this case. [Doc. 79].

On September 1, 2021, Defendants moved for summary judgment. [Doc. 95]. Defendants argue that summary judgment should be granted because Defendants did not violate Plaintiff's constitutional rights, because qualified immunity bars Plaintiff's claims for monetary relief, and because Plaintiff's Complaint was subject to dismissal in the first instance because he had previously had three actions dismissed as frivolous under 28 U.S.C. § 1915(g).[5] [Doc. 96]. In support of their summary judgment motion, Defendants submitted a brief; Plaintiff's infractions and disciplinary history; January 2, 2019 disciplinary hearing records, including copies of the confiscated documents; discovery documents produced to Plaintiff, including

---

[5] It appears that this action should have been dismissed in the first instance under 28 U.S.C. § 1915(g). This provision bars a prisoner who is proceeding in forma pauperis to file a civil action if the prisoner has, on 3 or more prior occasions, had an action dismissed for failure to state a claim for relief or as frivolous. 28 U.S.C. § 1915(g). Plaintiff has had three actions in this District (Case Nos. 1:04-cv-88, 1:05-cv-15, and 1:05-cv-225) dismissed for his failure to state a claim for relief and one action dismissed as frivolous in the Eastern District (Case No. 5:04-ct-599-BO). Since then, Plaintiff has had five actions dismissed in the Eastern District (Case Nos. 5:05-ct-408-H, 5:05-ct-490-D, 5:11-ct-03071-FL, 5:11-ct-03182-F, and 5:12-ct-03200-BO) under § 1915(g). Because the Court sees no direct authority allowing for dismissal at this stage of litigation under § 1915(g), the Court, out of an abundance of caution, addresses Defendants' summary judgment motion on the merits.

the NCDPS Offender Disciplinary Procedures Policy; and dismissal orders in previous actions filed by Plaintiff constituting "strikes" under 28 U.S.C. § 1915(g).  [Docs. 96, 97, 97-1 to 97-3].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 98].  The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion."  [Id. at 2].  Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))].  The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public.  An unsworn statement, made and signed under the penalty of perjury, may also be submitted.  Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

5

Case 1:19-cv-00020-MR     Document 101     Filed 12/06/21     Page 5 of 18

In response, Plaintiff filed a three-page, handwritten "Answer To Defendants Motion to Dismiss" that is not in the form of an affidavit or signed under penalty of perjury. [See Doc. 99]. As noted, neither of Plaintiff's complaints were verified or otherwise submitted under penalty of perjury and, therefore, also cannot be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment when the allegations contained therein are based on personal knowledge). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

Plaintiff is currently serving a life sentence for first degree murder. [See Doc. 97-2 at 1]. At the relevant times, he was classified as a Security Risk Group (SRG) inmate due to his validation as a member of the Blood gang. [Doc. 97-2 at 3]. On or around October 16, 2018, Officer Jennifer Grant was taking inventory or Plaintiff's property during his intake for the Rehabilitation Diversion Program (RDU)[6] at Marion. [Id. at 38]. Officer Grant discovered a folder labelled "legal papers" that "contained a stack of papers with a square cut out in the center that looked suspicious." [Id.]. Officer Grant also

---

[6] The RDU program at Marion "was created as part of North Carolina Department of Public Safety's (NCDPS) recent policy reforms regarding restrictive housing in the North Carolina prisons." Covington v. Lassiter, No. 1:16-cv-00387, 2017 WL 3840280, at *5 (W.D.N.C. Sept. 1, 2017). "[T]he RDU program was designed to help people transition from Control to regular population through the provision of targeted behavioral programming and increasing privileges, congregate activity, and out-of-cell time." Id. (internal quotations omitted).

discovered papers containing possible SRG material. [Id.]. She turned over the materials to SRG officers for review and the packet was given to SRG Intelligence Officer Adam Hergenrother. [Id. at 12, 38]. Officer Hergenrother reviewed the materials, which confirmed the cut out apparently intended to conceal contraband. The remaining papers contained references to "Sovereign Citizen"[7] concepts, documents reflecting Plaintiff's Sovereign Citizen status, and other forms and documents typically used by individuals who purport to be Sovereign Citizens. [Id. at 12]. On October 26, 2018, after his review, Officer Hergenrother concluded that Plaintiff "altered his legal work to conceal contraband and was in possession of a large amount of SRG related materials in reference to the sovereign citizens." [Id.].

Thereafter, Sergeant Chad Jenkins was assigned to investigate Plaintiff's offenses. [See id.]. Jenkins verified the statements and evidence collected by Hergenrother. [Id. at 13]. Jenkins also met with the Plaintiff as

---

[7] "So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States Citizens." Pinckney v. U.S. Government – I.R.S., No. 2:19-3046-BHH-BM, 2020 WL 3474011 (D.S.C. Jan. 27, 2020) (citation omitted). Sovereign Citizens, sometimes referred to as "free born Moors" or "Moorish American," "are widely recognized as a security threat group in prisons because the group attempts to undermine governmental authority." Love v. N.C. Dep't of Public Safety, No. 5:19-cv-00075-MR, 2020 WL 6050583 (W.D.N.C. Oct. 13, 2020). See e.g., Colar v. Heyns, No. 1:12-cv-1269, 2013 WL 141138, at *3 (W.D. Mich. Jan. 11, 2013) ("The 'sovereign citizen movement' is well documented. The Federal Bureau of Investigation has classified 'sovereign citizens' as domestic terror threats because they are anti-government extremists.").

part of his investigation. [Doc. 97-2 at 13]. Jenkins read Plaintiff his rights in the disciplinary hearing process. [Id.; see id. at 35]. On October 27, 2018, Plaintiff wrote a statement on his own behalf, claiming that Officer Hergenrother is clearly "incompetent and poorly trained." [Id. at 39]. Plaintiff claimed that he is not and never has been a sovereign citizen, that the "SRG clearly misrepresented [his] legal documents as something they are NOT, as these papers are letters from [his] lawyer, documents he provided, and the notes from [his] research of [his] legal matters." [Id.]. Finally, Plaintiff argued that the confiscated materials are "above [the prison officials'] comprehension." [Id. at 40]. Plaintiff requested that statements be gathered from Officer Grant and Mitchell Reich on Plaintiff's behalf. The confiscated documents show that Reich is or was Plaintiff's attorney. [Id. at 56-57, 65]. Plaintiff also requested that these witnesses be present – Reich by teleconference – at Plaintiff's disciplinary hearing. [Id. at 13]. Plaintiff requested certain evidence at the hearing, including his DC-160 Personal Property Inventory form and "SRG training schedules and hours spent for certification." [Id.]. Finally, Plaintiff requested staff assistance at the hearing. [Id.].

The confiscated documents included documents reflecting Plaintiff's proclaimed Sovereign Citizen status, including Plaintiff's "Declaration of

Sovereignty" and a "Proclamation" of Moorish American nationality; letters from Reich reflecting Plaintiff's request for assistance in registering as a non-U.S. Citizen and Reich's advice not to do so; UCC Financing Statements typically used by Sovereign Citizens for (attempted) financial gain; and other documents consistent with Plaintiff's alignment as a Sovereign Citizen. [See id. at 41-108]. As a result of the investigation, Jenkins recommended that Plaintiff be charged with an A-14 offense for participating in or organizing any gang or SRG activity and a C-17 offense for possessing contraband. [Id. at 14]. Jenkins submitted his Investigation Report to the Superintendent of Marion on December 18, 2018. [Id.].

A disciplinary hearing was held on January 2, 2019. [Doc. 97-2 at 1]. Defendant Robert Barker was the DHO. [See id. at 4]. Reich's statement had not been obtained, and Reich was not telephonically present at the hearing because the investigator was "not able to identify this person." [Id. at 13; see id. at 56-57, 65]. A statement from Officer Grant, however, had been obtained. [Id. at 5]. The requested SRG training materials were not collected because they are not public information, but that they would be provided on request of the DHO. Plaintiff's DC-160 form and copies of the SRG-related materials were provided with the Report. Correctional Officer S. Reynolds, who was present at the hearing to assist Plaintiff, spoke with

11

Case 1:19-cv-00020-MR    Document 101    Filed 12/06/21    Page 11 of 18

Plaintiff to ensure that he understood the process. Officer Reynolds also ensured that the proceedings were conducted according to current policy and procedures. [Id. at 8].

In his record of the hearing, Defendant Barker detailed the evidence before him and found Plaintiff guilty of the two charged offenses. [Doc. 97-2 at 3, 7]. Defendant Barker noted that, at the hearing, Plaintiff was unable to say why Reich was needed as a live witness or what other evidence Reich could have added for consideration. [Id. at 5]. It appears that Plaintiff received a suspended sentence of 20 days in the Restrictive Housing for Disciplinary Purposes (RHDP), 30 days lost good time credit, and 50 hours extra duty on the A-14 offense and a suspended sentence of 10 days lost good time credit and 30 hours extra duty on the C-17 offense.[8] [Id. at 3]. There is no forecast of evidence that any of these sentences were activated. Barker stated that Plaintiff's disciplinary history was considered when determining the sentence, which was "imposed to deter future acts of this nature." [Id. at 7].

Plaintiff appealed Defendant Barker's decision the same day. For

---

[8] The NCDPS Offender Disciplinary Procedures Policy provides that a DHO may suspend all or part of a sentence "for a period not to exceed ninety (90) days." [Doc. 97-4 at 13]. The DHO may activate a suspended sentence "if a disciplinary conviction occurs during the suspension time period." [Id.].

12

grounds, he stated, "[a]s a free born Moor, NC-DPS has no authority to classify [his] federal documents as SRG material." He also claims that he was "denied staff assistance; denied evidence; [and] denied to specify the foundation of accusation." [Doc. 97-2 at 2]. Defendant Barker's decision was upheld on appeal. [See Doc. 97-2 at 1].

## IV. DISCUSSION

### A. Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Supreme Court has repeatedly held that a prisoner has no constitutional right under the due process clause to be incarcerated in a particular facility or to be held in a specific security classification, barring some showing by the prisoner that his confinement posed an atypical and significant hardship in

relationship to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hewitt v. Helms, 459 U.S. 460, 468 (1976). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

"Where a prison disciplinary hearing may result in the loss of good time credits, Wolff held that the inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."

Superintendent, Mass. Correctional Institution v. Hill, 105 S. Ct. 2768 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974)).

Here, Plaintiff has failed to forecast sufficient evidence that he was deprived of "life, liberty, or property" by governmental action beyond that which is contemplated by the ordinary incidents of prison life. The undisputed forecast of evidence shows that Plaintiff was sentenced on his disciplinary infraction convictions in accordance with NCDPS Policy. The undisputed forecast of evidence does not show that Plaintiff actually lost any good time credits on this conviction. Rather, Plaintiff's sentence included only suspended sentences for time in RHDP, extra work, and lost good time credits and there is no forecast of evidence that these sentences were ever activated.

Moreover, even if Plaintiff had lost good time credits, the disciplinary hearing was conducted in a manner consistent with Plaintiff's rights under Wolff. Plaintiff was given ample notice of the disciplinary charges and was able to request and present evidence on his own behalf to the extent consistent with institutional safety and correctional goals. Defendant Barker prepared an extensive and thorough written statement of the evidence relied on and the reasons for the disciplinary action against Plaintiff. The only anomaly in the proceedings was the conclusion that Reich could not be

identified, although the confiscated documents showed that Reich was Plaintiff's attorney. It seems if the documents had been carefully reviewed Reich's identity would have been revealed. Nonetheless, even if Reich had been willing to give a statement on Plaintiff's behalf or appear telephonically at the hearing, there is no forecast of evidence that the result would have been different. In fact, it seems Reich's testimony, to the extent that Plaintiff would have realistically waived attorney client privilege, would have supported Plaintiff's conviction on the A-14 offense. The letters from Reich to Plaintiff reflected Plaintiff's desire to register his "sovereign status as a full life Moor" and Reich's advice not to do so. Furthermore, Plaintiff failed to explain how evidence from Reich would have added to the hearing evidence.

As such, the forecast of evidence does not show a constitutionally protected deprivation of Plaintiff's "life, liberty, or property" by governmental action. The Defendants' motion for summary judgment, therefore, will be granted.

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to

qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's claims against them. As such, the Court also grants summary judgment for Defendants on this ground.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 95] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: December 6, 2021

Martin Reidinger
Chief United States District Judge